ASHLEY SIMONSEN (SBN 275203)
 E-mail: ASimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

EMILY JOHNSON HENN (SBN 269482)
 E-mail: EHenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Attorneys for Defendant Facebook, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HURVITZ, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC., et al.,<br><br>    Defendants. | Case No. 2:20-cv-3400 (PA)(JPRx)<br><br>**DEFENDANT FACEBOOK, INC.'S RESPONSE TO ORDER TO SHOW CAUSE** |

## I. INTRODUCTION

On April 15, 2020, the Court ordered Plaintiff to show cause why venue is proper in this District and why the action should not be dismissed or transferred to another district pursuant to 28 U.S.C. §§ 1404 or 1406 (the "Show Cause Order"). *See* Dkt. 15. The Court also ordered all parties to submit responses to "assist the Court in determining whether transfer is appropriate and in the interest of justice." *Id.* at 2.

Defendant Facebook, Inc. ("Facebook") responds in support of transfer to the Northern District of California. *First*, Plaintiff has omitted a critical fact from his Complaint and Response to the Show Cause Order (Dkt. 29, "Response"): Plaintiff has had a Facebook account since 2008. He is therefore bound by Facebook's mandatory forum selection clause requiring that Plaintiff bring his claims against Facebook in the Northern District. As the Supreme Court made clear in *Atlantic Marine*, forum selection clauses are "controlling" in § 1404 transfer decisions "in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). *Second*, transfer is independently warranted under the first-to-file rule, given the substantial judicial economy to be gained by transferring this class action to the Northern District where 13 similar cases are pending. *Finally*, even if there were no forum selection clause, a transfer is warranted because the Northern District is a more convenient forum for three of the four parties in this case, and Plaintiff's choice of forum is heavily discounted here because he purports to represent a nationwide class. Individually and in combination, these circumstances urge the transfer of this action to the Northern District of California.

## II. BACKGROUND

### A. Similar Class Actions Pending In The Northern District

On March 30, 2020, a class action complaint was filed against Defendant Zoom Video Communications, Inc. ("Zoom") in the Northern District of California alleging that Zoom failed to protect its users' information by disclosing it to third parties such as Facebook and LinkedIn. *See Cullen v. Zoom Video Commc'ns, Inc.*, Case No. 5:20-cv-02155-LHK-SVK (N.D. Cal.). Since then, at least 13 more similar actions have been filed against Zoom, not including this one. *See* Declaration of Laura Brookover ("Brookover Decl."), ¶ 3. Thirteen actions total have been filed in or transferred to the Northern District of California. *Id.* ¶¶ 4–5. So far, ten of the cases in the Northern District have been deemed related and are pending before the Honorable Lucy H. Koh, because "it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." *Cullen*, Case No. 5:20-cv-02155-LHK-SVK, Dkt. 28, Stipulation and Order (N.D. Cal. Apr. 24, 2020). Motions are pending in the three other Northern District cases to relate them to the actions before Judge Koh. Brookover Decl., ¶¶ 4–5.

The allegations in these other cases are substantially similar to Plaintiff's here. For example, multiple other cases, like the Complaint in this action, allege:

(1) that an iOS version of the Zoom app sent user information to third parties, including Facebook, without consent, *e.g.*, Dkt. 1, Compl. ¶¶ 2–3, 78; Dkt. 29-2 (*Cullen* Compl.) ¶¶ 2, 14–16; Dkt. 29-3 (*Taylor* Compl.) ¶¶ 2, 31–51;

(2) that Zoom has admitted that its information-sharing practices were not fully disclosed to Zoom users, *e.g.*, Dkt. 1, Compl. ¶¶ 19, 50; Dkt. 29-2 (*Cullen* Compl.) ¶¶ 20; Dkt. 29-5 (*Kondrat* Compl.) ¶¶ 1, 19;

(3) that Zoom misrepresented its privacy and security practices in its consumer disclosures, *e.g.*, Dkt. 1, Compl. ¶¶ 20–23, 51, 70–72; Dkt. 29-2 (*Cullen* Compl.) ¶¶ 14–15; Dkt. 29-3 (*Taylor* Compl.) ¶¶ 45–50;

(4) that Facebook or other third parties used information shared by Zoom to display targeted advertising to Zoom users, *e.g.*, Dkt. 1, Compl. ¶¶ 58, 69; Dkt. 29-2 (*Cullen* Compl.) ¶¶ 15–16; Dkt. 29-3 (*Taylor* Compl.) ¶¶ 6, 36, 38; and

(5) that the alleged conduct supports claims under California's Unfair Competition Law, for common-law and constitutional invasion of privacy, and for unjust enrichment, *e.g.*, Dkt. 1, Compl. ¶¶ 53, 97–106, 148–154, 169–177, 209–226; Dkt. 29-2 (*Cullen* Compl.) ¶¶ 3, 21, 31–52, 84–89; Dkt. 29-3 (*Taylor* Compl.) ¶¶ 91–103, 113–133.

### B. Plaintiff's Facebook Account And Forum Selection Clause

A Facebook account exists for an individual named Todd Hurvitz who lives in Los Angeles, California, where Plaintiff resides, and lists his hometown as Highland Park, Illinois. *See* Declaration of Nicholas Wong ("Wong Decl."), ¶ 11; Dkt. 29-35, Declaration of Todd Hurvitz, ¶ 3. The account was registered on September 17, 2008. Wong Decl., ¶¶ 11–14. A public records search reveals that just one person named Todd Hurvitz lives in Los Angeles, and he is associated with a prior address in Highland Park, Illinois. *See* Brookover Decl., ¶ 7. Accordingly, the known evidence establishes that the Facebook account belongs to Plaintiff.

As a condition of registering and maintaining that account, Plaintiff agreed to Facebook's Terms of Use, now called the Terms of Service. Wong Decl., ¶ 13. The Terms of Service cover the "use of Facebook" as well as "Facebook Products," which are defined to include "the other products, features, apps, services, technologies, and software" that Facebook offers. *Id.* ¶ 21, Ex. C at 1.

The Terms of Service contain a mandatory forum selection clause, which provides:

> For any claim, cause of action, or dispute you have against us **that arises out of or relates to these Terms or the Facebook Products** ("claim"), **you agree that it will be resolved exclusively in the U.S. District Court for**

      **the Northern District of California** or a state court located in San Mateo County.

*Id.* ¶ 22 & Ex. C at 8 (emphasis added).

### III.    ARGUMENT

Under the factors identified in the Court's Show Cause Order and other applicable law, this case should be transferred to the Northern District of California.

#### A.    Venue Is Proper In The Northern District of California.

As Plaintiff concedes, venue is proper in the Northern District of California. Resp. at 8–9. A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A corporation is resident in a district if it is subject to personal jurisdiction there. *Id.* § 1391(c)(2). Defendants are all headquartered within the Northern District of California, making venue proper under § 1391(b)(1).

#### B.    Transfer Is Warranted Based On A Valid Forum Selection Clause.

Plaintiff's Complaint and Response each omits a critical fact: Plaintiff has had a Facebook account since 2008. *Supra* at 3. When Plaintiff registered for his account, he agreed to Facebook's Terms of Use (later called Terms of Service). Wong Decl., ¶ 13. Specifically, Plaintiff acknowledged that the Terms may change at any time and agreed that his "continued use" of Facebook after any changes were made "constitutes your acceptance of the new Terms of Use." *Id.* ¶ 15. Plaintiff also agreed that it was his responsibility to regularly check for changes to the Terms and review those changes. *Id.* Facebook's Terms and Data Policy are hyperlinked at the bottom of every Facebook webpage. *Id.* ¶ 20. Since February 2009, Facebook's Terms have included a mandatory forum selection clause requiring that federal court actions be brought in the Northern District of California. *Id.* ¶ 22.

The forum selection clause encompasses Plaintiff's claims against Facebook in this case. He alleges violations based on information sent to Facebook through his use of the Zoom app, which incorporated the Facebook Login feature from Facebook's iOS Software Development Kit ("SDK"). Compl., ¶ 55. Both the Facebook Login feature and the iOS SDK fall within the definition of "Facebook Products" in the Terms of Service, which broadly includes all features, technologies, and software (among other things) that Facebook offers. *See* Wong Decl., Ex. C at 1. Accordingly, Plaintiff's claims "relate to" Facebook Products, and thus are subject to the mandatory forum selection clause. *See id.* ¶ 22 & Ex. C at 8; *see also Franklin v. Facebook, Inc.*, No. 1:15-CV-00655, 2015 WL 7755670, at *3 (N.D. Ga. Nov. 24, 2015) (noting the "broad" scope of Facebook's forum selection clause). For the same reasons, the claims of putative class members who have Facebook accounts also are subject to the forum selection clause.

Facebook's forum selection clause has been held valid and enforceable by multiple courts. *See, e.g., Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1157 (D. Haw. 2018) (finding Facebook's forum selection clause enforceable and transferring case to the Northern District of California); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–35, 844 (S.D.N.Y. 2012) (same). Indeed, a district judge surveyed relevant case law and was unable to "identify a single instance where any federal court has struck down [Facebook's Terms of Service] as an impermissible contract of adhesion" or that "held the forum selection clause now at issue to be otherwise unenforceable." *Franklin*, at *2, *5 (collecting cases).

As the Supreme Court has made clear, a valid forum selection clause is enforceable under § 1404 and should be "given controlling weight in all but the most exceptional cases." *See Atl. Marine*, 571 U.S. at 63 (citation omitted). When a valid forum selection clause applies, courts must disregard (1) the plaintiff's choice of forum and (2) the parties' private interests, including convenience. *Id.* at 63–65; *see also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081,

1087–88 (9th Cir. 2018) (applying *Atlantic Marine*'s analysis to a forum selection clause). Instead, the parties' interests are considered to "weigh entirely in favor of the preselected forum," and courts "may consider arguments about public-interest factors only." *Id.* at 64. Those factors will "rarely" defeat transfer, and "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

It is Plaintiff's burden to show, based on public-interest factors, that "the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 64. Plaintiff has not attempted to meet this burden, and any such effort could not succeed. Public-interest factors include the forum's interest in resolving local controversies, and "the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (citation omitted). Those considerations are not decisive here, since this District and the Northern District are in the same state, adjacent to one another.

Because a valid, mandatory forum selection clause encompasses Plaintiff's claims against Facebook, the Court should transfer the case to the Northern District of California. *See TAP Holdings LLC v. PNC Bank,* No. CV 08-6310 PA (JTLx), 2008 WL 11339605, at *3 (C.D. Cal. Nov. 24, 2008) (noting that forum selection clauses are "presumptively valid" and ordering transfer because the plaintiff did not supply evidence of fraud to overcome the clause's enforcement).

### C. Transfer Is Warranted Under Traditional § 1404 Factors.

Even if there were no forum selection clause, a transfer to the Northern District is independently warranted under the traditional § 1404 analysis, which involves weighing (1) the convenience of the parties, (2) the convenience of the witnesses; and (3) the interests of justice. *See Metz v. U.S. Life Ins. Co. N.Y.C.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

### 1. First-To-File Rule

In the transfer context, the first-to-file rule bears on the interests of justice prong, because it determines whether a "waste of time, energy, and money" will be saved by transferring an action to a district where similar cases are pending. *Widjaja v. YUM! Brands, Inc.*, No. SACV09-0502 DOC (MLGx), 2009 WL 10673334, at *2 (C.D. Cal. June 8, 2009) (citation omitted). Indeed, the existence of earlier-filed cases "may be determinative" to transfer, "even if the convenience of the parties and witnesses might call for a different result." *EFG Bank AG, Cayman Branch v. Lincoln Nat'l Life Ins. Co.*, CV 17-817-JFW(KSx), 2017 WL 5635022, at *3 (C.D. Cal. June 8, 2017).

Here, there are 13 similar actions currently pending in the Northern District; ten are pending before Judge Koh, and the plaintiffs in the other three have moved to reassign them to Judge Koh as related cases. Brookover Decl., ¶¶ 3–5. Four of the Northern District cases were filed before Plaintiff filed this lawsuit. *Id.* ¶¶ 3 & 5. In these circumstances, it would be unnecessarily duplicative for this action to proceed separately in this District. *See EFG Bank*, 2017 WL 5635022, at *3 (transferring case to federal court in Pennsylvania, where five similar class actions were pending); *Bautista v. Best Buy Stores, L.P.*, No. CV 17-1026-GW(AJWx), 2017 WL 10443166, at *4–5 (C.D. Cal. May 1, 2017) (transferring class action to the Northern District of California, where a single earlier-filed action was pending).

It makes no difference that the other cases are brought against Zoom only. The first-to-file rule requires only that the parties are similar, and it "is satisfied whether or not there are additional unmatched parties." *Widjaja*, 2009 WL 10673334, at *3. Further, in a class action, "the classes themselves are compared, not the class representatives." *Id.* The putative class in this case overlaps with the classes in the Northern District actions; they variously purport to cover nationwide

classes of individuals and businesses who used the Zoom app and/or whose information was disclosed by Zoom to third parties.[1]

The issues in the cases also are similar. *See id.* at *4 ("The first-to-file rule does not require that actions are identical; instead the issues must be sufficiently similar."). For example, this Complaint and the earlier-filed complaints in the Northern District actions allege that Zoom unlawfully disclosed Zoom users' information to third parties, including Facebook, which the third parties used for targeting advertising, and they bring overlapping claims under the UCL and for common-law and constitutional invasion of privacy and unjust enrichment. *Supra* at 2–3 (giving examples of similarities among the complaints). These are "sufficient," if not overwhelming, similarities to support transfer. *See, e.g.*, *Bautista*, 2017 WL 10443166, at *4 (first-to-file rule supported transfer to the Northern District even though the class action pending there was "narrower" than the case before the court).

Application of the first-to-file rule confirms that the "interests of convenience, justice, and judicial economy will best be served" by transferring this action to the Northern District of California, where 13 similar actions are pending. *Widjaja*, at *5.

### 2. Contacts In The Northern District Are Greater Than In This District

Facebook's contacts with the Northern District are far more extensive than with the Central District, making the Northern District a more convenient forum in

---

[1] *Compare, e.g.*, Dkt. 1, Compl., ¶ 85 (defining class as everyone in the United States "whose personal or private information was unlawfully collected, disclosed and/or used . . . upon the installation, opening, closing or use of the Zoom App"), *with* Dkt. 29-2 (*Cullen* Complaint), ¶ 22 (defining class as everyone in the United States whose "information was collected and/or disclosed by Zoom to a third party upon installation or opening of the Zoom video conferencing application") *and* Dkt. 29-3 (*Taylor* Complaint), ¶ 65, (defining class as "[a]ll persons who used the Zoom app for iOS during the applicable limitations period").

which to litigate. Facebook's principal place of business and headquarters are located in Menlo Park in the Northern District, and it has additional offices in San Francisco, Mountain View, Sunnyvale, and Fremont, all of which are in the Northern District. Wong Decl., ¶ 2. Close to one-half of Facebook's nearly 45,000 employees work out of offices located in the Northern District. *Id.* ¶ 3. Facebook owns real property in the Northern District, and Facebook's two data centers in California are both in the Northern District. *Id.* ¶ 5.

In contrast, Facebook has only two offices in the Central District, in Los Angeles and Northridge, both of which it leases. *Id.* ¶ 6. Less than 1.5 percent of Facebook's employees work out of these offices. *Id.* ¶ 7. Facebook does not own real property in this District. *Id.* ¶ 6. Facebook's Los Angeles office, which is the larger of its two Central District offices, *id.*, focuses on the media and entertainment industries, as exemplified by the executives who are based there. *See* Dkt. 29-24 at 3. The Los Angeles office's primary operations are Facebook and Instagram partnerships, Facebook Watch, and the Oculus suite of virtual reality gaming platforms, none of which is relevant to this case. *See id.*

Plaintiff's allegations indicate that Zoom and LinkedIn likewise have greater contacts with the Northern District, where they are both headquartered. Dkt. 1, Compl., ¶¶ 9, 11. The only party more at home in the Central District is Plaintiff, but because he seeks to represent a nationwide class of plaintiffs, his choice of forum is "heavily" discounted. *Lily Jeung v. Yelp, Inc.*, No. CV 14-6223 FMO (ASx), 2015 WL 12990204, at *4 (C.D. Cal. May 13, 2015) ("heavily" discounting the weight given to plaintiff's choice of forum "because this matter is a putative class action"); *see also Jovel v. i-Health, Inc.*, No. CV 12-05526 DDP (JCGx), 2012 WL 5470057, at *3 (C.D. Cal. Nov. 8, 2012) (noting that in a proposed class action, the plaintiff's choice of forum deserved less weight, and convenience of the

parties favored transfer because although "Plaintiff would have some role in a trial, it would not be nearly as significant as that of Defendant").[2]

### 3. Contacts Relating To Plaintiff's Causes Of Action

The only alleged contact between Plaintiff's claims and this District is that he used the Zoom app here, which is insignificant. *Cf. R.A. v. Epic Games*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *8–9 (C.D. Cal. July 30, 2019) (plaintiff's mere use of the defendant's game in this District meant that plaintiff's choice of forum deserved less weight). And even that single contact does not exist for putative class members who reside outside this District, on whose behalf Plaintiff purports to bring claims.

The focus of Plaintiff's claims is Zoom's alleged disclosure of user information to LinkedIn, Facebook, and other third parties. *E.g.*, Dkt. 1, Compl., ¶ 2. Given that all three Defendants are headquartered in the Northern District and the totality of other factors addressed above, the Northern District has a more substantial connection to Plaintiff's claims than this District.

### 4. Location of Witnesses and Availability of Compulsory Process

Other than himself, Plaintiff has named only one potential witness: Zoom's CEO. Resp. at 11. He claims not to know where Zoom's CEO is located. *Id.*

At this stage in the case, Facebook does not know which individuals it may seek to call as witnesses. But because nearly one half of all Facebook employees work in the Northern District, *see* Wong Decl., ¶ 4, and fewer than 1.5 percent of its employees work in the Central District, *id.* ¶ 7, it stands to reason that Facebook

---

[2] The Court also ordered the parties to address sources of revenue and points of public contact in the respective Districts. Facebook does not record or distinguish between revenue earned in the Northern or Central Districts in the ordinary course of business, and Facebook's public-facing online terms are equally accessible within both Districts. *See* Wong Decl., ¶ 8.

employees with relevant knowledge are more likely to be located outside of the Central District.

Finally, given that the parties' potential witnesses are uncertain at this point, it is not clear whether the availability of compulsory process favors one District over the other.

### 5. Ease of Access to Sources of Proof and Difference in Litigation Costs

Presumably, much of the relevant evidence in this case will be digital. For that reason, Facebook does not anticipate a significant difference in ease of access to sources of proof between the Central and Northern Districts. Likewise, Facebook has not undertaken a comparison of expected litigation costs, and it considers the primary cost benefit of litigating in the Northern District would result from the anticipated proximity of a greater number of witnesses within that District.

### IV. CONCLUSION

For the foregoing reasons, the Court should transfer this action to the Northern District of California.

Dated: May 11, 2020                     COVINGTON & BURLING LLP


By: */s/ Emily Johnson Henn*
    Emily Johnson Henn

    Attorneys for Defendant
    FACEBOOK, INC.