David B. Owens (Bar No. 275030)
david@loevy.com
Mike Kanovitz (*pro hac vice*)
mike@loevy.com
Scott R. Drury (*pro hac vice*)
drury@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

Marci L. Miller (Bar No. 162790)
marci@milleradvocacy.com
Christina N. Hoffman (Bar No. )
choffman@milleradvocacy.com
MILLER ADVOCACY GROUP PC
1303 Avocado Ave., Suite 230
Newport Beach, California 92660
(949) 706-9734 (phone)
(949) 266-8069 (fax)

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HURVITZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK and LINKEDIN CORPORATION,<br><br>Defendants. | Case No. 2:20-cv-3400 (PA)(JPRx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

LOEVY & LOEVY
Attorneys at Law

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff Todd Hurvitz, by his attorneys, submits this First Amended Class Action Complaint against Defendants Facebook and LinkedIn Corporation ("LinkedIn") (collectively, "Defendants"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Defendant Facebook is one of the most popular social media platforms in the world. While Facebook does not charge those who use its platform, it monetizes users by collecting data about them and then using that data in connection with its targeted advertising business.

2.     Defendant LinkedIn is another popular social media platform that offers free use of its services, as well as paid memberships. Like Defendant Facebook, LinkedIn monetizes customers by collecting data about them and then using that data to offer other services it sells to customers.

3.     In their quest to amass increasingly detailed profiles about individual members of the public and generate increased revenues, Defendants Facebook and LinkedIn have intentionally and surreptitiously: (a) collected data from persons who logged into third-party websites or used third-party software applications ("App")

(collectively, "third-party platforms") that had certain Facebook or LinkedIn software development kits ("SDKs") and/or application program interfaces ("APIs") installed or integrated into the website or App – regardless of whether the person was a Facebook or LinkedIn member and regardless of whether the person was logged into his Facebook or LinkedIn account; (b) intercepted, and endeavored to intercept, the electronic communications between members of the public and third-party platforms; and (c) used and disclosed, and endeavored to use and disclose, the contents of the electronic communications between members of the public and third-party platforms.

4.     For example, unbeknownst to members of the public who installed, opened or closed a third-party app that utilized the "Login with Facebook" feature of Defendant Facebook's SDK for iOS (the "Login with Facebook Feature"), Facebook intentionally and surreptitiously: (a) intercepted, and endeavored to intercept, the electronic communications between the users' devices and the third-party apps, even if the users did not have a Facebook account or were not logged into their Facebook accounts; and (b) used, and endeavored to use, the contents of the electronic communications between the users and the third-party apps. Alternatively, Facebook gained unauthorized access to the third-party apps' servers and accessed the stored content of the electronic communications between the third-party apps and their users.

5.     Similarly, unbeknownst to members of the public using third-party

**FIRST AMENDED CLASS ACTION COMPLAINT**

LOEVY & LOEVY
Attorneys at Law

platforms that utilized Defendant LinkedIn's Sales Navigator API ("Navigator"), upon logging into or opening the third-party platform, LinkedIn intentionally and surreptitiously: (a) intercepted, and endeavored to intercept, the electronic communications between the users' devices and the third-party platforms, even if the users did not have a LinkedIn account or were not logged into their LinkedIn accounts; and (b) used, and endeavored to use, the contents of the electronic communications between the users and the third-party platforms. Alternatively, LinkedIn gained unauthorized access to the third-party platforms' servers and accessed the stored content of the electronic communications between the third-party platforms and their users. LinkedIn used this information to provide members who subscribed to its Navigator service with the identities and LinkedIn profiles of users of the specified third-party platform, even if those persons took steps to conceal their identities.

6.     Defendants Facebook and LinkedIn were not parties to the electronic communications at issue and engaged in their unlawful conduct without the consent or authorization of either party to the communications.

7.     Defendants Facebook and LinkedIn engaged in their unlawful conduct in order to amass increasingly detailed profiles of the online public, which information they used to generate increased revenues through the sale of advertising, services and products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

8.    Plaintiff brings this action for statutory, compensatory and punitive damages, as well as declaratory and injunctive relief, in order to: (a) require Defendants to provide monetary relief for their unlawful, unfair and deceptive conduct; (b) require Defendants to disgorge their ill-gotten gains; and (c) prevent and preclude Defendants from engaging in similar conduct in the future.

## PARTIES

9.    Plaintiff Todd Hurvitz is a California resident, residing in the Central District of California.

10.    Defendant Facebook is a Delaware corporation, with its corporate headquarters in Menlo Park, California. Facebook's 2019 revenue totaled approximately $71 billion. As of December 2019, Facebook averaged 2.50 billion monthly active users.  According to a recent filing with the United States Security and Exchange Commission: (a) Facebook is a social network that generates substantially all of its revenue from selling advertising placements to marketers; (b) Facebook ads allow marketers to reach people based on various factors including age, gender, behaviors, location and interests; and (c) Facebook's advertising revenue depends on "targeting and measurement tools that incorporates data signals from user activity on websites."

11.    Defendant LinkedIn is a Delaware subsidiary of Microsoft Corporation ("Microsoft"), with its corporate headquarters in Sunnyvale, California.  According to

Microsoft's 2019 Annual Report, LinkedIn is the "world's largest professional network on the Internet" with revenue totaling $5.3 billion. Among the products offered by LinkedIn at relevant times was Navigator, a sales tool that provided automated targeting of prospective customers. The minimum annual fee for access to Navigator was $780.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class.

13.     This Court has personal jurisdiction over Defendants Facebook and LinkedIn because each is headquartered in California, marketed and sold its products and services to California consumers and businesses and exposed California residents to ongoing privacy risks created by its conduct.

14.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because: (a) both Defendants reside in the Central District of California; and (b) a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in the Central District of California. For instance:

a.     Plaintiff Hurvitz resides in the Central District of California and used third-party platforms that utilized Login with Facebook and/or Navigator –

LOEVY & LOEVY
Attorneys at Law

including a software application offered by Zoom Video Communications, Inc. ("Zoom") – in the Central District of California. Defendants Facebook and LinkedIn surreptitiously intercepted communications between Plaintiff and the third-party platforms that originated from Plaintiff's devices in the Central District of California. The harm Plaintiff suffered as a result of Defendants' conduct occurred in the Central District of California.

b.      Defendant Facebook has a substantial presence within the Central District of California. Since approximately 2008, Facebook has maintained a corporate office in the Central District which, as of approximately 2019, encompassed 260,000 square feet of office space. The Central District corporate office houses various Facebook executives, including the head of North America entertainment media partnerships and the head of development for the Facebook video service Facebook Watch.

c.      Defendant Facebook derives substantially all of its revenue from selling advertising placement to marketers, who can target customers based on geography. Facebook's active user base – the potential consumers that power the company's ad sales – comprise almost 70% of the U.S. adult population. Based on this figure, on information and belief, Facebook targeted its unlawful conduct, as alleged

LOEVY & LOEVY
Attorneys at Law

herein, at thousands of Central District of California residents, including residents who are not Facebook users.

        d.    Defendant LinkedIn is company with an estimated 133 million American users. Based on this figure, on information and belief, LinkedIn targeted its unlawful conduct, as alleged herein, at thousands of Central District of California residents, including residents who are not LinkedIn members.

## FACTUAL ALLEGATIONS

### *SDKs and APIs*

15.    An SDK is a compilation of tools, code, processes and guides used for creating software applications on a specific platform. An SDK is akin to "one-stop shopping," in that an SDK provides everything necessary to address an issue a website developer seeks to resolve.

16.    An API is an interface that allows software to interact with other software. Unlike an SDK, is not all-encompassing. Rather, an API allows one platform to communicate with another platform.

### *Defendants' Use of SDKs and APIs*

17.    To increase revenue and market reach, Defendants Facebook and LinkedIn offered various SDKs and APIs to third parties.

**FIRST AMENDED CLASS ACTION COMPLAINT**

LOEVY & LOEVY
Attorneys at Law

*The Login with Facebook Feature*

18.     At relevant times, Defendant Facebook made the Facebook SDK for iOS available to third parties for incorporation into their platforms.  Features that could be integrated into a third-party platform via the Facebook SDK for iOS included Facebook's "Like" button and the Login with Facebook Feature which allowed a third-party app user to log into the third-party app using his Facebook login credentials.

19.     Third-party apps that utilized the Login with Facebook Feature typically would have a Login with Facebook button – as depicted below – integrated into the app:



20.     A third-part app operator that integrated the Login with Facebook Feature into its apps had the ability to set various "permissions" that the feature would allow the app to collect from users. For instance, a third-party app operator could set the "permissions" to allow the Login with Facebook Feature to provide the app operator with users' public Facebook profiles and email addresses, as depicted in the image below:

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21.     Defendant Facebook promoted the Login with Facebook Feature as a way for a third-party operator: (a) to allow users to more easily create an account with the third-party; and (b) to access users' data.

22.     However, Defendant Facebook did not disclose to third-party app operators that the Login with Facebook Feature gave Facebook the ability to intercept electronic communications between the third-party apps and their users. Facebook did not seek, nor receive, consent from third-party app developers to intercept electronic communications between third-party apps and their users.

23.     Defendant Facebook did not seek, nor receive, consent from users of third-party apps that utilized the Login with Facebook Feature to intercept the electronic communications between the users' devices and the third-party apps.

*The Navigator API*

24.    At relevant times, Defendant LinkedIn allowed third-party platforms to integrate Navigator into their platforms via an API.

25.    The Navigator API allowed users of third-party platforms to access the LinkedIn profiles of other users of the platforms. The profile information provided was displayed in a format similar to that depicted below:





26.    Defendant LinkedIn did not disclose to third-party platform operators that integration of the Navigator API gave LinkedIn the ability to intercept electronic communications between the third-party platforms and their users. LinkedIn did not

seek, nor receive, consent from third-party platform developers to intercept electronic communications between third-party platforms and their users.

27.    Defendant LinkedIn did not seek, nor receive, consent from users of third-party platforms that utilized Navigator to intercept the electronic communications between the users' devices and the third-party platforms.

***Defendants' Unlawful Interception, Use and/or Disclosure of Electronic Communications***

### *Defendant Facebook*

28.    Defendant Facebook designed the Login with Facebook Feature to provide it with a way to spy on the content of electronic communications between third-party apps and their users contemporaneously with those communications taking place.

29.    Via the Login with Facebook Feature, Defendant Facebook surreptitiously, contemporaneously and intentionally intercepted, and endeavored to intercept, the electronic communications between third-party apps that had integrated feature into their apps and users of those apps.

30.    Similarly, via the Login with Facebook Feature, Defendant Facebook surreptitiously and intentionally used, and endeavored to use, the contents of the electronic communications between third-party apps that had integrated the feature into the apps and users of the third-party apps.

31.    Defendant Facebook engaged in the above-described conduct regardless of whether a third-party app user was a Facebook member and regardless of whether the app user was logged into his Facebook account.

32.    In the alternative, via the Login with Facebook Feature, Defendant Facebook intentionally and without authorization accessed a facility through which an electronic communication service was provided – namely, third-party apps – and obtained access to electronic communications while those communications were in electronic storage.  Facebook engaged in this conduct regardless of whether a third-party app user was a Facebook member and regardless of whether the user was logged into his Facebook account.

33.    Defendant Facebook engaged in the conduct alleged herein without the consent or authorization of either party to the electronic communications.

34.    For example, at relevant times, Zoom offered an app that integrated the Login with Facebook Feature.  In a recent statement, Zoom stated that it had integrated the Login with Facebook Feature as a convenient way for Zoom users to access its platform.  According to Zoom, it was unaware of Facebook's surreptitious interception of electronic communications between Zoom users and Zoom.

35.    Defendant Facebook engaged in deceptive conduct to conceal its unlawful conduct.

36.     By intercepting the electronic communications between third-party apps and their users, Defendant Facebook amassed increasingly detailed profiles third-party app users, which profiles Facebook then used in the marketing and execution of its targeted advertising business.

37.     Defendant Facebook unjustly enriched itself through its intentional and surreptitious: (a) interception of electronic communications between third-party apps and their users; and (b) use of the contents of those electronic communications. Facebook's unlawful conduct allowed it to: (a) amass increasingly detailed profiles on users of the third-party apps; and (b) increase its advertising business revenues by marketing its ability to target advertisements based on the detailed personal profiles it possessed.

38.     Alternatively, Defendant Facebook unjustly enriched itself by intentionally and without authorization accessing a facility through which an electronic communication service was provided – namely, third-party apps – and obtaining access to electronic communications while those communications were in electronic storage. Facebook's unlawful conduct allowed it to: (a) amass increasingly detailed profiles on users; and (b) increase its advertising business revenues by marketing its ability to target advertisements based on the detailed personal profiles it possessed.

***Defendant LinkedIn***

39.    Defendant    LinkedIn    designed    Navigator    API    to    allow    it    to contemporaneously intercept, and endeavor to intercept, the electronic communications between the third-party platforms and their users.

40.    Via    the    Navigator    API,    Defendant    LinkedIn    surreptitiously, contemporaneously   and   intentionally   intercepted,   and   endeavored   to   intercept, electronic communications between third-party platforms that had integrated Navigator API into their platforms and the platforms' users, regardless of whether a user was a LinkedIn member and regardless of whether the user was logged into his LinkedIn account.

41.    After Defendant LinkedIn intercepted the electronic communications described above, it then used and disclosed, and endeavored to use and disclose, the contents of those electronic communications to better market its products and services in order to generate increased revenues.

42.    In the alternative, via the Navigator API integration, Defendant LinkedIn intentionally and without authorization accessed a facility through which an electronic communication service was provided – namely, third-party platforms – and obtained access to electronic communications while those communications were in electronic

LOEVY & LOEVY
Attorneys at Law

storage.  LinkedIn engaged in this conduct regardless of whether a user was a LinkedIn member and regardless of whether the user was logged into his LinkedIn account.

43.     The personal information Defendant LinkedIn learned from the above-described conduct included users' persistent identifiers and other details that allowed LinkedIn to identify the users by name and LinkedIn profile, even when the users sought to keep their identities anonymous.

44.     Defendant LinkedIn engaged in the conduct alleged herein without the consent or authorization of either party to the electronic communications.

45.     For example, at relevant times, Zoom integrated the Navigator API into its platforms. Zoom was not aware that integration of the Navigator API allowed Defendant LinkedIn to surreptitiously intercept the electronic communications between Zoom users and Zoom. Upon learning this fact, Zoom permanently removed the Navigator API from its platform.

46.     By obtaining the content of users' electronic communications with third parties, Defendant LinkedIn amassed increasingly detailed profiles of the users of the third-party platforms for use in marketing and selling Navigator and other products and services.

47.     Defendant LinkedIn unjustly enriched itself through the intentional and surreptitious: (a) interception of electronic communications between third-party

LOEVY & LOEVY
Attorneys at Law

platforms and their users; and (b) use and disclosure of the contents of those communications in order to increase sales of Navigator and other LinkedIn services and products.

48.     Alternatively, Defendant LinkedIn unjustly enriched itself by intentionally and without authorization accessing a facility through which an electronic communication service was provided – namely, third-party platforms – and obtaining access to electronic communications while those communications were in electronic storage in order to increase sales of Navigator and other LinkedIn services and products.

***Reasonable Expectation of Privacy***

49.     As alleged in more detail below, the users of the third-party platforms that had integrated the Login with Facebook Feature and/or the Navigator API had a reasonable expectation of privacy in their electronic communications with third-party platforms and the contents of those communications.

50.     The contents of the communications at issue consisted of, among other things, users' personally identifiable and sensitive information, including: (a) iOS Advertiser ID; (b) iOS Timezone; (c) IP Address; (c) iOS Language; (d) iOS Disk Space Available; (e) iOS Disk Space Remaining; (f) iOS Device Model; (g) iOS Version; (h) Device Carrier; (i) iOS Device CPU Cores; (j) Application Bundle Identifier; (k) Application Instance ID; (l) Application Version; (m) on information and belief,

LOEVY & LOEVY
Attorneys at Law

referring and exit URLs; and (n) other persistent identifiers by which a user could be identified, such as, on information and belief, Android Advertiser IDs and device identifiers.

51.    When a user logs into a platform or opens an app, the substance and meaning of the corresponding communication is all of the information collected by the platform to authenticate and identify the user so that the user may access the platform's services. Similarly, the purpose of the communication is to allow the platform to determine whether to grant the user access to the platform based on the authenticating and identifying information provided. A user who prevents device and other identifying information – such as that described in the preceding paragraph – from being transmitted to the third-party platform by disabling cookies, using a virtual private network to mask the user's internet protocol addresses, or through other methods may be denied access to the platform due to the platform's inability to properly authenticate and identify the user. Thus, as alleged herein, the electronic communications at issue concerned the substance, purpose and meaning of users' communications with third-party platforms on which the Login with Facebook Feature and/or the Navigator API were integrated.

52.     By tracking the referring and exit URLs of users of third-party platforms Defendants obtained highly sensitive communications and information about the users, including their actual web browsing histories.

53.     An iOS Advertiser ID or Android Advertiser ID  is known as a persistent identifier and is particularly sensitive because it is specifically assigned to a user's device and can be tracked over time, across platforms and linked to a specific user. When linked to other data points about the same user – such as the data points described above – a persistent identifier reveals a personal profile that data collectors like Defendants Facebook and LinkedIn can exploit.

54.     The Federal Trade Commission ("FTC") has described the way in which companies like Defendants Facebook and LinkedIn can use persistent identifiers in conjunction with other data points to amass a valuable profile on an individual:

> [In a recent survey], one ad network received information from 31 different apps.  Two of these apps transmitted geolocation to the ad network along with a device identifier [a type of persistent identifier], and the other 29 apps transmitted other data (such as app name, device configuration details, and the time and duration of use) in connection with a device ID.  ***The ad network could thus link the geolocation information obtained through the two apps to all the other data collected through the other 29 apps by matching the unique, persistent device ID.***[1]

---

[1] Federal Trade Commission, *Mobile Apps for Kids: Disclosures Still Not Making the Grade*, at 10, n.25 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/mobile-apps-kids-disclosures-still-not-making-grade/121210mobilekidsappreport.pdf (last accessed on Apr. 11, 2020) (emphasis added).

55.     Defendant Facebook's and LinkedIn's unlawful, surreptitious collection of personal information of users' of third-party platforms on which the Login with Facebook Feature and/or the Navigator API were integrated allowed them to amass increasingly detailed profiles on users showing how, when and why they used the platforms, along with other inferences that could be drawn therefrom.

56.     Indeed, by obtaining a user's iOS Advertiser ID or Android Advertiser ID, along with other information, such as that described above, Defendants Facebook and LinkedIn were able to identify the specific user and amass the data collected from the third-party platforms with other data previously collected by Facebook and LinkedIn, giving them multiple ways to identify the user even if the user took steps to keep his identity anonymous.

57.     Moreover, the combination of either of the Advertiser IDs and other data, such as that described above, better allowed Defendants Facebook and LinkedIn to deanonymize a user's data and reidentify the user.  This is significant because many companies contend that they only share, sell or use personal information in an aggregate and/or anonymized format. By obtaining Advertiser IDs, along with other personal

LOEVY & LOEVY
Attorneys at Law

information, such as that described above, Defendants Facebook and LinkedIn could render the concept of anonymized data a nullity.[2]

58.     As far back as 1928, Justice Brandeis famously acknowledged American's right and expectation of privacy, writing that the makers of the Constitution "conferred as against the government, the right to be let alone – the most comprehensive of rights and the most valued by civilized men."[3]

59.     The FTC has recognized the public's expectation of privacy in their online data. Speaking to the scope of Section 5 of the FTC Act, 15 U.S.C. § 45, *et seq.*, an FTC commissioner noted in 2015 that the "FTC first began to apply Section 5 to companies' privacy and data security practices two decades ago," when "it was clear that the personal data flowing as part of electronic commerce could be used to cause financial harm to consumers."[4] The Commissioner further stated that at the time the FTC began applying § 5 to data privacy issues, it was clear that "that personal data practices could cause a much broader array of harms."[5]

---

[2] Luc Rocher, *et al.*, *Estimating the Success of Re-Identification in Incomplete Datasets Using Generative Models*, Nature Communications (July 23, 2019), https://www.nature.com/articles/s41467-019-10933-3 (last accessed on Apr. 11, 2020) (discussing reidentification of anonymized data).
[3] *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).
[4] Julie Brill, *U.S. Privacy Law: Hiding in Plain Sight*, Federal Trade Comm'n (Apr. 30, 2015), 2015 WL 1968595, at *2.
[5] *Id.*

LOEVY & LOEVY
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

60.     The public's growing concern over the privacy of their online information is reflected in the increasing number of comprehensive data privacy and data protection laws that are being introduced in state legislatures across the country and being passed throughout the world.[6]

61.     For instance, in 2018, the General Data Protection Regulation ("GDPR") took effect in Europe.[7] The GDPR regulates how companies treat the personal data of EU citizens.[8]

62.     In 2018, Vermont enacted a law the regulates data brokers and requires them to disclose to individuals the data that is being collected about them and allows individuals to opt out of the collection.[9]

63.     On January 1, 2020, the California Consumer Privacy Act ("CCPA") went into effect.[10] The CCPA "is one of the broadest online privacy laws in the U.S., affecting companies across the country that do business with California residents."[11]

---

[6] *2019 Consumer Data Privacy Legislation*, Nat'l Conf. of State Legis. (Jan. 3, 2020), https://www.ncsl.org/research/telecommunications-and-information-technology/cybersecurity-legislation-2020.aspx (last accessed on Apr. 26, 2020).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

64.     In 2019, 25 states introduced  over 100 pieces of legislation seeking to regulate the privacy of consumer data.[12]

65.     It also well-established in American jurisprudence that snooping on private communications is highly offensive conduct.

66.     The Federal Wiretap Act of 1968 regulated the interception of telephone communications.

67.     The Electronic Communications Privacy Act of 1986 ("ECPA") updated the Federal Wiretap Act to strictly regulate the interception of computer, digital and electronic communications.

68.     Two components of the ECPA are the Wiretap Act, 18 U.S.C. § 2510, *et seq.* (the "Wiretap Act"), and the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* (the "Stored Communications Act"). The Wiretap Act addresses, in part, the interception, use and disclosure of electronic communications and the contents thereof. 18 U.S.C. § 2511. The Stored Communications Act addresses, in part, the unauthorized access of a facility through which an electronic communication service is provided in order to obtain access to an electronic communication that is in electronic storage. 18 U.S.C. § 2701.

_____

[12] *Id.*

**FIRST AMENDED CLASS ACTION COMPLAINT**

LOEVY & LOEVY
Attorneys at Law

*The Market for Data*

69. Several online companies allow individuals to sell their own data online.

70. One such company estimates that an individual can earn up $2,000 per year selling his data.

71. By unlawfully collecting, distributing and using the data of users of third-party platforms, Defendants diminished the value of the data and unjustly enriched themselves.

**Defendants' History of Lax Security and Deceptive Data Privacy Practices**

**Defendant Facebook**

72. Defendant Facebook has a long history of lax security practices and deceptive data privacy practices, as exemplified by the allegations below:

73. Similar to Defendant Facebook's conduct here, in 2011, a researcher disclosed that Facebook covertly tracked the websites Facebook users visited when users were logged out of Facebook. Facebook began engaging in the conduct in April 2010 and did not cease doing so until the *Wall Street Journal* published the researcher's findings in September 2011.

74. In 2012, the FTC charged Defendant Facebook with eight separate privacy-related violations, including that Facebook made misrepresentations regarding users' ability to control the privacy of their personal data. In response, Facebook agreed

**FIRST AMENDED CLASS ACTION COMPLAINT**

to change its privacy practices. However, Facebook breached its agreement with the FTC, resulting in the FTC imposing a record-setting $5 billion penalty against Facebook in 2019.

75.   In 2015, Defendant Facebook was sued for violating the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq.*, as a result of a facial recognition feature that tagged people's photos. In January 2020, Facebook settled the matter for $550 million.

76.   In 2018, hackers exploited a vulnerability in Defendant Facebook's code and stole the personal information of approximately 29 million Facebook users. Facebook has agreed to settle a consolidated class action arising out of the data breach. As part of the settlement, Facebook has agreed to implement improved security practices.

### *Defendant LinkedIn*

77.   Defendant LinkedIn also has long a history of lax security practices and deceptive data privacy practices.

78.   In 2010, Defendant LinkedIn experienced a data breach in which a hacker obtained the passwords of approximately 6.5 million users. According to reports, LinkedIn failed to store the passwords in a secure manner. LinkedIn settled the matter for $1.25 million.

**FIRST AMENDED CLASS ACTION COMPLAINT**

LOEVY & LOEVY
Attorneys at Law

79.    Between September 2011 and October 31, 2014, Defendant LinkedIn imported contacts from users' external email contacts and then repeatedly emailed those contacts without obtaining consent to use the users' names and likenesses. LinkedIn settled the matter for $13 million.

80.    In November 2018, Ireland's Data Protection Commissioner found that Defendant LinkedIn obtained the email addresses of 18 million non-members and then targeted those non-members with Facebook advertisements without their consent. LinkedIn subsequently agreed to cease engaging in the conduct.

***Allegations Related to Plaintiff Hurvitz***

81.    At relevant times, Plaintiff Hurvitz – from his residence and other places located within the Central District of California – used devices running the iOS and macOS operating systems to access third-party platforms that utilized the Login with Facebook Feature and the Navigator API, including Zoom's platforms.

82.    Plaintiff Hurvitz did not authorize Defendants Facebook and LinkedIn to intercept his electronic communications with third-party platforms.

83.    Plaintiff Hurvitz did not authorize Defendants Facebook and LinkedIn to use and/or disclose the contents of his electronic communications with third-party platforms.

84.     Plaintiff Hurvitz did not authorize Defendants Facebook and LinkedIn to access third-party platforms he used and obtain his electronic communications with those platforms while they were in electronic storage.

85.     Plaintiff Hurvitz did not consent to the installation of code on his devices that served to benefit the collection of his personal information by Defendants Facebook and LinkedIn.

86.     Plaintiff Hurvitz did not have knowledge of the conduct of Defendants Facebook and LinkedIn with respect to his data, as alleged herein.

**Plaintiff Hurvitz's and Class Members' Injuries and Damages**

87.     As a result of the conduct of Defendants Facebook and LinkedIn, Plaintiff Hurvitz and Class Members have suffered and will continue to suffer severe consequences, as Defendants' conduct has, among other things:

    a.     Diminished the value of the personal information of Plaintiff and Class Members;

    b.     Invaded Plaintiff's and Class Members' privacy;

    c.     Deprived Plaintiff and Class Members of the ability to control the collection, use and distribution of their personal information;

    d.     Deprived Plaintiff and Class Members of their right to control and to choose how to use their identities for commercial purposes;

e.      Inhibited the ability of Plaintiff and Class Members to control the information third parties receive about them;

f.      Trespassed upon Plaintiff's and Class Members' devices; and

g.      Precluded Plaintiff and Class Members from conditioning Defendants' use of their personal information on an agreement to provide Plaintiff and Class Members with a portion of the proceeds.

88.     Defendants' wrongful actions have directly and proximately caused Plaintiff Hurvitz and Class Members to face the immediate and continuing increased risk of economic damages and other actual harm for which they are entitled to compensation, including, among others:

a.      Damages to, and diminution in the value of, the personal information Defendants' intercepted, used and distributed;

b.      Costs associated with reviewing and trying to stop unwanted advertisements and solicitations, such as time taken from the enjoyment of one's life, and the inconvenience, nuisance, cost and annoyance of dealing with the unwanted solicitations; and

c.      The loss of Plaintiff's and Class Members' privacy.

*Fraudulent Concealment and Tolling*

89.     The applicable statutes of limitations are tolled by virtue of Defendants' knowing and active concealment of the facts alleged above. Plaintiff Hurvitz and Class Members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their part.

90.     Defendants' fraudulent concealment is common to each of the classes defined below.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff Hurvitz brings this action on behalf of himself as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following nationwide Class for which Plaintiff seeks certification:

> All persons and businesses in the United States whose electronic communications with websites and/or software applications were unlawfully intercepted, used and/or disclosed by Facebook and/or LinkedIn (the "Nationwide Class").

92.     Additionally, Plaintiff Hurvitz brings this action on behalf of the following subclass of individuals and businesses seeking damages and relief:

> All persons and businesses in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington and West

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

Virginia whose electronic communications with websites and/or software applications were unlawfully intercepted, used and/or disclosed by Facebook and/or LinkedIn (the "Intrusion Upon Seclusion Subclass").

93.     Additionally, Plaintiff Hurvitz brings this action on behalf of a California subclass seeking damages and equitable relief on behalf of the following:

All persons and businesses in the State of California whose electronic communications with websites and/or software applications were unlawfully intercepted, used and/or disclosed by Facebook and/or LinkedIn (the "California Subclass").

94.     Excluded from the Class and Subclasses are: (a) Defendants Facebook and LinkedIn; (b) any parent, affiliate or subsidiary of Facebook or LinkedIn; (c) any entity in which Facebook or LinkedIn has a controlling interest; (d) any of Facebook's or LinkedIn's officers or directors; or (e) any successor or assign of Facebook or LinkedIn. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

95.     Plaintiff Hurvitz reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

96.     **Numerosity.** Consistent with Rule 23(a)(1), the Class and Subclasses (collectively, the "Classes") are so numerous that joinder of all members is impracticable. While Plaintiff Hurvitz does not know the exact number of members of

the Classes, the Nationwide Class contains millions of people. Class Members may be identified through objective means, including objective data available to Defendants regarding whose data they unlawfully collected, disclosed and/or used. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice. All members of the various classes are readily ascertainable because Defendants have access to information regarding the identities of the persons whose data is at issue.

97.    **Commonality and predominance.**   Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Classes. Common questions include, but are not limited to the following:

        a.    Whether Defendants engaged in wrongful conduct as alleged herein;

        b.    Whether Defendants Facebook and LinkedIn intentionally and without the necessary consents intercepted the contents of Class Members' electronic communications with third-party platforms;

        c.    Whether Defendants Facebook and LinkedIn intentionally and without the necessary consents used the contents of Class Members' electronic communications with third-party platforms knowing or

LOEVY & LOEVY
Attorneys at Law

having reason to know that the information was obtained through the unlawful interception of the electronic communications;

d.  Whether Defendants Facebook and LinkedIn intentionally and without the necessary consents disclosed the contents of Class Members' electronic communications with third-party platforms knowing or having reason to know that the information was obtained through the unlawful interception of the electronic communications

e.  Whether Defendants Facebook and LinkedIn intentionally gained unauthorized access to third-parties' servers where they accessed the electronically-stored communications between the third parties, on the one hand, and Plaintiffs and Class Members, on the other;

f.  Whether Defendants Facebook and LinkedIn intentionally and without the necessary consents used a recording device to eavesdrop upon and record the confidential communications between Plaintiff's and Class Members' devices, on the one hand, and third parties' servers on the other.

g.  Whether Defendants Facebook and LinkedIn willfully and without the necessary consents, in an unauthorized manner read, attempted

LOEVY & LOEVY
Attorneys at Law

to read and learned the contents and meaning of communications between Plaintiff's and Class Members' devices and third-parties' servers;

h.    Whether Defendants Facebook and LinkedIn obtained the personal information of Plaintiff and Class Members under false pretenses;

i.    Whether Defendants Facebook and LinkedIn invaded Plaintiff's and Class Members' privacy;

j.    Whether Defendants Facebook and LinkedIn engaged in unfair or deceptive trade practices by failing to disclose the true nature of how they intercepted, used and disclosed Plaintiff's and Class Members' personal information;

k.    Whether Defendants Facebook and LinkedIn engaged in unfair or deceptive trade practices by failing to disclose the true nature of how they gained access to third-parties' servers to access the electronically-stored communications between Defendants, on the one hand, and Plaintiff and Class Members, on the other.

l.    Whether Plaintiff and Class Members suffered damages as a proximate result of the conduct of Defendants Facebook and LinkedIn;

LOEVY & LOEVY
Attorneys at Law

m.    Whether Defendants Facebook and LinkedIn unjustly enriched themselves through their unlawful conduct; and

n.    Whether Plaintiff and Class Members are entitled to damages, equitable relief and other relief.

98.    **Typicality.**   Plaintiff Hurvitz's claims are typical of the claims of the Classes he seeks to represent because Plaintiff and all members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests to advance adverse to the interests of the other members of the Classes.

99.    **Adequacy.**   Plaintiff will fairly and adequately protect the interests of Classes and has retained as his counsel attorneys experienced in class actions and complex litigation.

100.    **Superiority.**   A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties

LOEVY & LOEVY
Attorneys at Law

and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

101.   In the alternative, the proposed classes may be certified because:

    a.    The prosecution of separate actions by each individual member of the Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

    b.    The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and

    c.    Defendants acted or refused to act on grounds generally applicable to the proposed classes, thereby making final and injunctive relief appropriate with respect to members of the Classes.

102.   Pursuant to Rule 23(c)(4) particular issues are appropriate for certification – namely the issues described in paragraph 97, above, because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

# CLAIMS FOR RELIEF

## COUNT ONE
## WIRETAP ACT, 18 U.S.C. § 2511(1)(a)
### (On behalf of the National Class Against Defendant Facebook)

103.    Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

104.    The electronic communications between third-party apps, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce by, on information and belief, crossing state lines.

105.    Defendant Facebook intentionally intercepted, and endeavored to intercept electronic communications, as alleged herein, between third-party apps, on the one hand, and Plaintiff and Class Members, on the other.  Facebook was not a party to the electronic communications.

106.    Defendant Facebook intercepted, and endeavored to intercept, the electronic communications at issue contemporaneously with the occurrence of those communications, but separately from the actual communications between the participants to the communications.

**FIRST AMENDED CLASS ACTION COMPLAINT**

107.    Defendant Facebook intercepted, and endeavored to intercept, the electronic communications at issue without obtaining or receiving the consent or authorization of any party to the electronic communications.

108.    Defendant Facebook's conduct violated the Wiretap Act.

109.    As a direct and proximate result of Defendant Facebook's violation of the Wiretap Act, Plaintiff's and Class Members' personal information was disclosed to Facebook and used in a manner that otherwise harmed Plaintiff and Class Members, causing Plaintiff and Class Members to suffer injuries.

110.    Plaintiff and Class Members seek the greater of: (a) the sum of actual damages they suffered and any profits made by Defendant Facebook as a result of its violations of the Wiretap Act; or (b) statutory damages in the amount of $100 a day for each day of violation or $10,000, whichever is greater.

111.    Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

112.    Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries

in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT TWO
### WIRETAP ACT, 18 U.S.C. § 2511(1)(a)
### (On behalf of the National Class Against Defendant LinkedIn)

113.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

114.   The login and other communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce by, on information and belief, crossing state lines.

115.   Defendant LinkedIn intentionally intercepted, and endeavored to intercept electronic communications, as alleged herein, between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other. LinkedIn was not a party to the electronic communications.

116.   Defendant LinkedIn intercepted, and endeavored to intercept, the electronic communications at issue contemporaneously with the occurrence of those

LOEVY & LOEVY
Attorneys at Law

communications, but separately from the actual communications between the participants to the communications.

117. Defendant LinkedIn intercepted, and endeavored to intercept, the electronic communications at issue without obtaining or receiving the consent or authorization of any party to the electronic communications.

118. Defendant LinkedIn's conduct violated the Wiretap Act.

119. As a direct and proximate result of Defendant LinkedIn's violation of the Wiretap Act, Plaintiff's and Class Members' personal information was disclosed to LinkedIn and used in a manner that otherwise harmed Plaintiff and Class Members, causing Plaintiff and Class Members to suffer injuries.

120. Plaintiff and Class Members seek the greater of: (a) the sum of actual damages they suffered and any profits made by Defendant LinkedIn as a result of its violations of the Wiretap Act; or (b) statutory damages in the amount of $100 a day for each day of violation or $10,000, whichever is greater.

121. Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

122. Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use

the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the entities to which it was disclosed.

## COUNT THREE
### WIRETAP ACT, 18 U.S.C. § 2511(1)(c)
### (On behalf of the National Class Against Defendant LinkedIn)

123.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

124.   The alleged electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce.

125.   As alleged herein, the login communications between third-party platforms, on the one hand, and Plaintiff and Class Members on the other, constitute the contents of an electronic communication because the information communicated concerned the substance, purport and meaning of the communication.

126.   Defendant LinkedIn intentionally disclosed, and endeavored to disclose, to users of third-party platforms the contents of the electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, as alleged herein. LinkedIn was not a party to the electronic communications.

127.   Defendant LinkedIn knew, and had reason to know, that the information at issue was obtained through the interception of electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, because LinkedIn was directly involved in the interception.

128.   Defendant LinkedIn intercepted, and endeavored to intercept, the electronic communications at issue contemporaneously with the occurrence of those communications, but separately from the actual communications between the participants to the communications.

129.   Defendant LinkedIn intercepted and endeavored to intercept the contents of the electronic communications at issue without obtaining or receiving the consent or authorization of any party to the electronic communications.

130.   Defendant LinkedIn's conduct violated the Wiretap Act.

131.   As a direct and proximate result of Defendant LinkedIn's violation of the Wiretap Act, Plaintiff's and Class Members' personal information was disclosed by

LOEVY & LOEVY
Attorneys at Law

LinkedIn to others and used in a manner that otherwise harmed Plaintiff and Class Members, causing Plaintiff and Class Members to suffer injuries.

132.   Plaintiff and Class Members seek the greater of: (a) the sum of actual damages they suffered and any profits made by Defendant LinkedIn as a result of its violations of the Wiretap Act; or (b) statutory damages in the amount of $100 a day for each day of violation or $10,000, whichever is greater.

133.   Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

134.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT FOUR
## WIRETAP ACT, 18 U.S.C. § 2511(1)(d)
### (On behalf of the National Class Against Defendant Facebook)

135.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

136.   The login and other communications between third-party apps, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce.

137.   As alleged herein, the electronic communications between third-party apps, on the one hand, and Plaintiff and Class Members on the other, constitute the contents of an electronic communication because the information communicated concerned the substance, purport and meaning of the communication.

138.   Defendant Facebook intentionally used, and endeavored to use, the contents of the electronic communications between third-party apps, on the one hand, and Plaintiff and Class Members, on the other. Specifically, Facebook used the contents of the communications to generate increased revenues through the sale of advertising.

139.   Defendant Facebook was not a party to the electronic communications.

140.   Defendant Facebook knew, and had reason to know, that the information at issue was obtained through the interception of electronic communications between third-party apps, on the one hand, and Plaintiff and Class Members, on the other, because Facebook was directly involved in the interception.

141.   Defendant Facebook intercepted, and endeavored to intercept, the electronic communications at issue contemporaneously with the occurrence of those communications, but separately from the actual communications between the participants to the communications.

142.   Defendant Facebook intercepted and endeavored to intercept the contents of the electronic communications at issue without obtaining or receiving the consent or authorization of any party to the electronic communications.

143.   Defendant Facebook's conduct violated the Wiretap Act.

144.   As a direct and proximate result of Defendant Facebook's violation of the Wiretap Act, Plaintiff's and Class Members' personal information was disclosed by Facebook to others and used in a manner that otherwise harmed Plaintiff and Class Members, causing Plaintiff and Class Members to suffer injuries.

145.   Plaintiff and Class Members seek the greater of: (a) the sum of actual damages they suffered and any profits made by Defendant Facebook as a result of its

violations of the Wiretap Act; or (b) statutory damages in the amount of $100 a day for each day of violation or $10,000, whichever is greater.

146.   Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

147.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT FIVE
### WIRETAP ACT, 18 U.S.C. § 2511(1)(d)
### (On behalf of the National Class Against Defendant LinkedIn)

148.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

149.   The electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in

LOEVY & LOEVY
Attorneys at Law

whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce.

150. As alleged herein, the electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members on the other, constitute the contents of an electronic communication because the information communicated concerned the substance, purport and meaning of the communication.

151. Defendant LinkedIn intentionally used, and endeavored to use, the contents of electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other. Specifically, LinkedIn used, and endeavored to use, the contents of the communications to increase sales of its services and products.

152. Defendant LinkedIn was not a party to the electronic communications.

153. Defendant LinkedIn knew, and had reason to know, that the information at issue was obtained through the interception of electronic communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, because LinkedIn was directly involved in the interception.

154. Defendant LinkedIn intercepted, and endeavored to intercept, the electronic communications at issue contemporaneously with the occurrence of those

communications, but separately from the actual communications between the participants to the communications.

155.   Defendant LinkedIn intercepted and endeavored to intercept the contents of the electronic communications at issue without obtaining or receiving the consent or authorization of any party to the electronic communications.

156.   Defendant LinkedIn's conduct violated the Wiretap Act.

157.   As a direct and proximate result of Defendant LinkedIn's violation of the Wiretap Act, Plaintiff's and Class Members' personal information was disclosed by LinkedIn to others, causing Plaintiff and Class Members to suffer injuries.

158.   Plaintiff and Class Members seek the greater of: (a) the sum of actual damages they suffered and any profits made by Defendant LinkedIn as a result of its violations of the Wiretap Act; or (b) statutory damages in the amount of $100 a day for each day of violation or $10,000, whichever is greater.

159.   Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

160.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members'

detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT SIX
### STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701(a)(1)
### (On behalf of the National Class Against Defendant Facebook)

161.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

162.   This count is alleged in the alternative to Counts One and Four.

163.   The login and other communications between third-party apps, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce.

164.   The servers of the third-party app operators were electronic communication services because they provided users the ability to receive electronic communications, as alleged herein, among other communications.

165.   After Plaintiff and Class Members provided the third-party apps with their electronic information, the third-party apps' operators electronically stored that electronic communication on their servers as temporary or intermediate storage or to provide backup protection of those communications.

166.   Defendant Facebook willfully and intentionally accessed without authorization facilities through which electronic communication services were provided – namely, the servers of the third-party apps' operators – and thereby obtained access to the electronic communications at issue while they were in electronic storage in the servers.

167.   Defendant Facebook's conduct violated the Stored Communications Act.

168.   As a direct and proximate result of Defendant Facebook's violation of the Stored Communications Act, Plaintiff's and Class Members' personal information was obtained by Facebook, causing Plaintiff and Class Members to suffer injuries.

169.   Plaintiff and Class Members seek the sum of actual damages they suffered and any profits made by Defendant Facebook as a result of its violations of the Stored Communications Act, which in no case may be less than $1,000.

170.   Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

171.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT SEVEN
### STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701(a)(1)
### (On behalf of the National Class Against Defendant LinkedIn)

172.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

173.   This count is alleged in the alternative to Counts Two, Three and Five.

174.   The login and other communications between third-party platforms, on the one hand, and Plaintiff and Class Members, on the other, constitute electronic communications under the Wiretap Act, 18 U.S.C. § 2510(12), as they consist of the transfer of signs, signals, writing, images, sounds, data or intelligence transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affect interstate commerce.

LOEVY & LOEVY
Attorneys at Law

175. The servers of third-party platforms operators were electronic communication services because they provided users the ability to receive electronic communications, as alleged herein, among other communications.

176. After Plaintiff and Class Members provided the third-party platforms with their electronic login information, the third-party platforms' operators electronically stored that electronic communication on their servers as temporary or intermediate storage or to provide backup protection of those communications.

177. Defendant LinkedIn willfully and intentionally accessed without authorization facilities through which electronic communication services were provided – namely, the servers of the third-party platforms' operators – and thereby obtained access to the electronic communications at issue while they were in electronic storage in the servers.

178. Defendant LinkedIn's conduct violated the Stored Communications Act.

179. As a direct and proximate result of Defendant LinkedIn's violation of the Stored Communications Act, Plaintiff's and Class Members' personal information was obtained by LinkedIn, causing Plaintiff and Class Members to suffer injuries.

180. Plaintiff and Class Members seek the sum of actual damages they suffered and any profits made by Defendant LinkedIn as a result of its violations of the Stored Communications Act, which in no case may be less than $1,000.

181.   Plaintiff and Class Members also seek punitive damages, reasonable attorney's fees and other litigation costs reasonably incurred.

182.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT EIGHT
### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631
### (On behalf of the California Subclass against Defendant Facebook)

183.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

184.   Defendant Facebook willfully and without the consent of all parties to communications between Plaintiff and Class Members, on the one hand, and the third-party apps, on the other – namely, the electronic communications, as alleged herein, among others – in an unauthorized manner read, attempted to read and learned the contents and meaning of the messages, reports and communications between those

LOEVY & LOEVY
Attorneys at Law

parties while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.

185.   Defendant Facebook collected the personal information by willfully and intentionally using a recording device to record and eavesdrop on, and by otherwise reading, attempting to read and learning the contents and meaning of, communications between the Plaintiff's and Class Members' computers and devices and the servers of third-party apps' operators while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California. Facebook engaged in this conduct in an unauthorized manner and without Plaintiff's and Class Members'  knowledge or consent. As alleged herein, Plaintiff and Class Members had a reasonable expectation of privacy in the communications and reasonably believed the communications were confidential.

186.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

187.   Defendant Facebook was not a party to the above-described communications.

188.   Defendant Facebook's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between

LOEVY & LOEVY
Attorneys at Law

Plaintiff's and Class Members' computers and devices and the servers of third-party apps' operators.

189.   Defendant Facebook's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 631.

190.   As a direct and proximate result of Defendant Facebook's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to Facebook, causing Plaintiff and Class Members to suffer injuries.

191.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages.

192.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

LOEVY & LOEVY
Attorneys at Law

## COUNT NINE

### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631
### (On behalf of the California Subclass against Defendant LinkedIn)

193.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

194.   Defendant LinkedIn willfully and without the consent of all parties to communications between Plaintiff and Class Members, on the one hand, and the third-party platforms, on the other – namely, the electronic communications, as alleged herein, among others – in an unauthorized manner read, attempted to read and learned the contents and meaning of the messages, reports and communications between those parties while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California.

195.   Defendant LinkedIn collected the personal information by willfully and intentionally using a recording device to record and eavesdrop on, and by otherwise reading, attempting to read and learning the contents and meaning of, communications between the Plaintiff's and Class Members' computers and devices and the servers of third-party platforms' operators while the same were in transit and passing over any wire, line or cable and were being sent from and received within the State of California. LinkedIn engaged in this conduct in an unauthorized manner and without Plaintiff's and Class Members'  knowledge or consent. As alleged herein, Plaintiff and Class

Members had a reasonable expectation of privacy in the communications and reasonably believed the communications were confidential.

196.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

197.   Defendant LinkedIn was not a party to the above-described communications.

198.   Defendant LinkedIn's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' computers and devices and the servers of third-party platforms' operators.

199.   Defendant LinkedIn's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 631.

200.   As a direct and proximate result of Defendant LinkedIn's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to LinkedIn, causing Plaintiff and Class Members to suffer injuries.

201.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages.

202.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

## COUNT TEN
### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632
**(On behalf of the California Subclass against Defendant Facebook)**

203.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

204.   Defendant Facebook intentionally and without the consent of all parties to confidential communications between Plaintiff and Class Members, on the one hand, and third-party platforms, on the other – namely, the electronic communications, as alleged herein, among others – used a recording device to eavesdrop upon and record the confidential communications.

205.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

LOEVY & LOEVY
Attorneys at Law

206.  As alleged herein, Plaintiff and Class Members had a reasonable expectation of privacy in the above-described communications and reasonably expected them to be confidential.

207.  Defendant Facebook was not a party to the above-described communications.

208.  Defendant Facebook's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between Plaintiff's and Class Members' computers and devices and the servers of third-party apps' operators.

209.  The following items, among others, constitute recording devices within the meaning of the California Invasion of Privacy Act:

      a.      The Third-Party Platforms;

      b.      The Login with Facebook Feature;

      c.      Plaintiff's and Class Members' web browsers;

      d.      Plaintiff's and Class Members' mobile operating systems;

      e.      The Third-Party Platforms' Servers; and

      f.      The servers and websites from which Defendant Facebook tracked, intercepted and recorded Plaintiff's and Class Members' communications with third-party platforms.

LOEVY & LOEVY
Attorneys at Law

210.   Defendant Facebook's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 632.

211.   As a direct and proximate result of Defendant Facebook's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to Facebook, causing Plaintiff and Class Members to suffer injuries.

212.   Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages.

213.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT ELEVEN
### CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632
### (On behalf of the California Subclass against Defendant LinkedIn)

214.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

215.   Defendant LinkedIn intentionally and without the consent of all parties to confidential communications between Plaintiff and Class Members, on the one hand, and third-party platforms, on the other – namely, the electronic communications, as alleged herein, among others – used a recording device to eavesdrop upon and record the confidential communications.

216.   Plaintiff and Class Members did not authorize or consent to the conduct in the paragraph above.

217.   As alleged herein, Plaintiff and Class Members had a reasonable expectation of privacy in the above-described communications and reasonably expected them to be confidential.

218.   Defendant LinkedIn was not a party to the above-described communications.

219.   Defendant LinkedIn's conduct was designed to read, attempt to read and learn at least some of the meaning of the content of the communications between

Plaintiff's and Class Members' computers and devices and the servers of third-party platforms' operators.

220.   The following items, among others, constitute recording devices within the meaning of the California Invasion of Privacy Act:

        a.      The Third-Party Platforms;

        b.      The Navigator API;

        c.      Plaintiff's and Class Members' web browsers;

        d.      Plaintiff's and Class Members' mobile operating systems;

        e.      The Third-Party Platforms' Servers; and

        f.      The servers and websites from which Defendant Facebook tracked, intercepted and recorded Plaintiff's and Class Members' communications with third-party platforms.

221.   Defendant LinkedIn's conduct violated the California Invasion of Privacy Act, Cal. Pen. Code, § 632.

222.   As a direct and proximate result of Defendant LinkedIn's violation of the California Invasion of Privacy Act, Plaintiff's and Class Members' personal information was disclosed to LinkedIn, causing Plaintiff and Class Members to suffer injuries.

LOEVY & LOEVY
Attorneys at Law

223.    Plaintiff and Class Members seek the greater of $5,000 per violation or three times the amount of actual damages.

224.    Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

### COUNT TWELVE
**INTRUSION UPON SECLUSION**
**(On behalf of the Intrusion Upon Seclusion Subclass**
**against Defendant Facebook)**

225.    Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

226.    Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

227.    Defendant Facebook intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents

LOEVY & LOEVY
Attorneys at Law

and meaning of Plaintiff's and Class Members' communications with third-party apps, which contents contained personal information and allowed Facebook to identify Plaintiff and Class Members even if they did not want to be identified. Facebook's intrusion occurred in a manner highly offensive to a reasonable person.

228.  Defendant Facebook's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

229.  As a direct and proximate result of Defendant Facebook's unlawful intrusion upon Plaintiff's and Class Members' seclusion, Plaintiff's and Class Members' personal information has been disclosed to Facebook, and their reasonable expectations of privacy have been intruded upon and frustrated.

230.  Plaintiff and Class Members have suffered injuries as a result of Defendant Facebook's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

231.  Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries

LOEVY & LOEVY
Attorneys at Law

in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT THIRTEEN
### INTRUSION UPON SECLUSION
### (On behalf of the Intrusion Upon Seclusion Subclass against Defendant LinkedIn)

232.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

233.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

234.   Defendant LinkedIn intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with third-party platforms, which contents contained  personal information and allowed LinkedIn to identify Plaintiff and Class Members even if they did not want to be identified. LinkedIn's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

235.   Defendant LinkedIn's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

236.   As a direct and proximate result of Defendant LinkedIn's unlawful intrusion upon Plaintiff's and Class Members' seclusion, Plaintiff's and Class Members' personal information has been disclosed to LinkedIn, and their reasonable expectations of privacy have been intruded upon and frustrated.

237.   Plaintiff and Class Members have suffered injuries as a result of Defendant LinkedIn's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

238.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT FOURTEEN
### INVASION OF PRIVACY UNDER CALIFORNIA CONSITUTION – ARTICLE I, SECTION 1
### (On behalf of the California Subclass against Defendant Facebook)

239.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

240.   Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties. As such, Plaintiff and Class Members possessed a legally protected privacy interest.

241.   Defendant Facebook intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with third-party apps, which contents contained personal information and allowed Facebook to identify Plaintiff and Class Members even if they did not want to be identified. Facebook's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

242.   Moreover, as alleged above, Defendant Facebook's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

243.   As a direct and proximate result of Defendant Facebook's unlawful invasion of Plaintiff's and Class Members' privacy, Plaintiff's and Class Members' personal information has been disclosed to Facebook, and their reasonable expectations of privacy have been intruded upon and frustrated.

244.   Plaintiff and Class Members have suffered injuries as a result of Defendant Facebook's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

245.   Moreover, unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained  personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT FIFTEEN
### INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION – ARTICLE I, SECTION 1
### (On behalf of the California Subclass against Defendant LinkedIn)

246. Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

247. Plaintiff and Class Members had a reasonable expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties. As such, Plaintiff and Class Members possessed a legally protected privacy interest.

248. Defendant LinkedIn intentionally and maliciously intruded upon Plaintiff's and Class Members' privacy rights by surreptitiously learning the contents and meaning of Plaintiff's and Class Members' communications with third-party platforms, which contents contained personal information and allowed LinkedIn to identify Plaintiff and Class Members even if they did not want to be identified. LinkedIn's intrusion occurred in a manner highly offensive to a reasonable person, as a reasonable person would not expect a third party to surreptitiously learn the contents of the person's communications.

249. Moreover, as alleged above, Defendant LinkedIn's intrusion upon Plaintiff's and Class Members' privacy rights was so serious as to constitute an egregious breach of social norms such that the breach was highly offensive.

250.    As a direct and proximate result of Defendant LinkedIn's unlawful invasion of Plaintiff's and Class Members' privacy, Plaintiff's and Class Members' personal information has been disclosed to LinkedIn, and their reasonable expectations of privacy have been intruded upon and frustrated.

251.    Plaintiff and Class Members have suffered injuries as a result of Defendant LinkedIn's conduct, and they are entitled to appropriate relief, including compensatory and punitive damages.

252.    Moreover, unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT SIXTEEN
### UNLAWFUL AND UNFAIR BUSINESS PRACTICES
### IN VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*
### (On behalf of the California Subclass against Defendant Facebook)

253.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

254.   California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

255.   Defendant Facebook engaged in unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

256.   Defendant Facebook has engaged in the following unlawful, unfair and fraudulent business acts and practices:

      a.     Failing to comply with the Wiretap Act, 18 U.S.C. § 2511, as alleged above;

      b.     Failing to comply with the Stored Communications Act, 18 U.S.C. § 2701, as alleged above;

      c.     Failing to comply with the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632, as alleged above;

      d.     Intrusion upon seclusion, as alleged above;

e.     Invasion of privacy under the California Constitution, Art. I, § 1, as alleged above;

f.     Failing to comply with the § 1798.100(b) of the CCPA;

g.     Failing to comply with § 5 of the FTC Act (15 U.S.C. § 45);

h.     Unfair competition in lessening the value of Plaintiff's and Class Members' personal information, which they could sell elsewhere;

i.     Omitting, suppressing and concealing that it did not comply with common law and statutory duties pertaining to Plaintiff's and Class Members' personal information, including duties imposed by the Wiretap Act, 18 U.S.C. § 2511; the Stored Communications Act, 18 U.S.C. § 2701; California Constitution, Art. I, § I; the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632; the CCPA, Cal. Civ. Code § 1798.100(b); and § 5 of the FTC Act, 15 U.S.C. § 45.

257.     With respect to Defendant Facebook's violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional

purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

258.    Section 1798.140(o)(1) defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household," Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to:

> (A)  Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, internet protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

> \*       \*       \*

> (F)  Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement.

> (G)  Geolocation data.

*Id.*

259.    Plaintiff and Class Members are consumers under the CCPA. *See* Cal. Civ. Code § 1798.140(g).

260.    Defendant Facebook is a business under the CCPA. *See* Cal. Civ. Code § 1798.140(c).

LOEVY & LOEVY
Attorneys at Law

261.   As alleged herein, in violation of the CCPA, Defendant Facebook collected Plaintiff's and Class Members' personal information but failed to provide Plaintiff and Class Members with the information required by the CCPA, namely Facebook failed to accurately inform Plaintiff and Class Members as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

262.   As alleged herein, Defendant Facebook further violated the CCPA by using the personal information it collected from Plaintiff and Class Members for undisclosed purposes without providing the requisite notice.

263.   With respect to Defendant Facebook's violation of § 5 of the FTC Act, the FTC has brought numerous actions against businesses for their unfair and deceptive practices in harvesting personal information from a software application.

264.   At relevant times, Defendant Facebook knew of its obligations to act fairly and honestly in its business dealings and not to violate § 5 of the FTC Act.

265.   Defendant Facebook's conduct with respect to Plaintiff's and Class Members' personal information constituted an unfair and deceptive practice in violation of § 5 of the FTC Act.

266.   Defendant Facebook's above-described conduct constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral,

unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class Members; and (b) violated established public policy. These acts caused substantial injury to Plaintiff and Class Members; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further Facebook's legitimate business interests.

267.   By collecting, disclosing and using Plaintiff's and Class Members' personal information in ways that Plaintiff and Class Members did not know of or consent to, Defendant Facebook engaged in fraudulent business practices that were likely to deceive a reasonable consumer.

268.   A reasonable person would not have agreed to use the various third-party apps at issue had Defendant Facebook not concealed, omitted and suppressed the truth about its practices, as alleged herein. By withholding material information about its practices, Facebook deceived customers into using products that allowed Facebook to surreptitiously collect Plaintiff's and Class Members' personal information. Accordingly, Facebook's conduct also was fraudulent within the meaning of the UCL.

269.   As a result of Defendant Facebook's violations of the UCL, Plaintiff and Class Members have suffered an injury-in-fact and have lost money and property. Plaintiff and Class Members are entitled to restitution and disgorgement, declaratory and other equitable relief.

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

270.    Moreover, Plaintiff and Class Members are entitled to injunctive relief. Unless and until enjoined and restrained by order of this Court, Defendant Facebook's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Facebook and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## COUNT SEVENTEEN
### UNLAWFUL AND UNFAIR BUSINESS PRACTICES
### IN VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*
### (On behalf of the California Subclass against Defendant LinkedIn)

271.    Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

272.    California's Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

273.    Defendant LinkedIn engaged in unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

274.    Defendant LinkedIn has engaged in the following unlawful, unfair and fraudulent business acts and practices:

LOEVY & LOEVY
Attorneys at Law

a.  Violation of the Wiretap Act, 18 U.S.C. § 2511, as alleged above;

b.  Violation of the Stored Communications Act, 18 U.S.C. § 2701, as alleged above;

c.  Failing to comply with the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632, as alleged above;

d.  Intrusion upon seclusion, as alleged above;

e.  Invasion of privacy under the California Constitution, Art. I, § 1, as alleged above;

f.  Failing to comply with § 1798.100(b) of the CCPA;

g.  Failing to comply with § 5 of the FTC Act (15 U.S.C. § 45);

h.  Unfair competition in lessening the value of Plaintiff's and Class Members' personal information, which they could sell elsewhere;

i.  Omitting, suppressing and concealing that it did not comply with common law and statutory duties pertaining to Plaintiff's and Class Members' personal information, including duties imposed by the Wiretap Act, 18 U.S.C. § 2511; the Stored Communications Act, 18 U.S.C. § 2701; California Constitution, Art. I, § I; the California Invasion of Privacy Act, Cal. Pen. Code §§ 631-632; the CCPA, Cal. Civ. Code § 1798.100(b); and § 5 of the FTC Act, 15 U.S.C. § 45.

LOEVY & LOEVY
Attorneys at Law

275.   With respect to Defendant LinkedIn's violations of the CCPA, pursuant to Cal. Civ. Code § 1798.100(b), a business: (a) "that collects a consumer's personal information shall, at or before the point of collection, inform customers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used"; and (b) "shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

276.   Cal. Civ. Code § 1798.140(o)(1) defines "personal information" as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household,"  Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to:

> (A) Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, internet protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.
>
> *      *      *
>
> (F) Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and

information regarding a consumer's interaction with an internet website, application, or advertisement.

(G)  Geolocation data.

*Id.*

277.  Plaintiff and Class Members are consumers under the CCPA. *See* Cal. Civ. Code § 1798.140(g).

278.  Defendant LinkedIn is a business under the CCPA. *See* Cal. Civ. Code § 1798.140(c).

279.  As alleged herein, in violation of the CCPA, Defendant LinkedIn collected Plaintiff's and Class Members' personal information but failed to provide Plaintiff and Class Members with the information required by the CCPA, namely, LinkedIn failed to accurately inform Plaintiff and Class Members as to the categories of personal information to be collected and the purposes for which the categories of personal information were to be used.

280.  As alleged herein, Defendant LinkedIn further violated the CCPA by using the personal information it collected from Plaintiff and Class Members for undisclosed purposes without providing the requisite notice.

281.  With respect to Defendant LinkedIn's violation of § 5 of the FTC Act, the FTC has brought numerous actions against businesses for their unfair and deceptive practices in harvesting personal information from a software application.

LOEVY & LOEVY
Attorneys at Law

282.    At relevant times, Defendant LinkedIn knew of its obligations to act fairly and honestly in its business dealings and not to violate § 5 of the FTC Act.

283.    Defendant LinkedIn's conduct with respect to Plaintiff's and Class Members' personal information constituted an unfair and deceptive practice in violation of § 5 of the FTC Act.

284.    Defendant LinkedIn's above-described conduct constituted unfair practices in violation of the UCL because the practices and acts: (a) were immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class Members; and (b) violated established public policy. These acts caused substantial injury to Plaintiff and Class Members; this substantial injury outweighed any benefits to competition or the purpose of such conduct, and there were reasonably available alternatives to further LinkedIn's legitimate business interests.

285.    By collecting, disclosing and using Plaintiff's and California Subclass Members' personal information in ways that Plaintiff and Class Members did not know of or consent to, Defendant LinkedIn engaged in fraudulent business practices that were likely to deceive a reasonable consumer.

286.    A reasonable person would not have agreed to use the various third-party platforms at issue had Defendant LinkedIn not concealed, omitted and suppressed the truth about its practices, as alleged herein. By withholding material information about

its practices, LinkedIn deceived customers into using products that allowed LinkedIn to surreptitiously collect Plaintiff's and Class Members' personal information. Accordingly, LinkedIn's conduct also was fraudulent within the meaning of the UCL.

287.   As a result of Defendant LinkedIn's violations of the UCL, Plaintiff and Class Members have suffered injury-in-fact and have lost money and property. Plaintiff and Class Members are entitled to restitution and disgorgement, declaratory and other equitable relief.

288.   Moreover, Plaintiff and Class Members are entitled to injunctive relief. Unless and until enjoined and restrained by order of this Court, Defendant LinkedIn's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that LinkedIn and others can continue to use the unlawfully obtained personal information to Plaintiff's and Class Members' detriment. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require LinkedIn to retrieve the personal information from the unauthorized entities to which it was disclosed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## COUNT EIGHTEEN
### TRESPASS TO CHATTELS
**(On behalf of the Nationwide Class against all Defendants)**

289.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

290.   Defendants Facebook and LinkedIn, intentionally and without consent or other legal justification, installed code on Plaintiff's and Class Members' devices that enabled Defendants to collect, disclose and use Plaintiff's and Class Members' personal information in unauthorized ways and for unauthorized purposes.

291.   Defendants' conduct as alleged in the paragraph above interfered with Plaintiff's and Class Members' use of the following property owned by Plaintiff and Class Members: (a) their computers; (b) their mobile devices; and (c) their personal information.

292.   Plaintiff and Class Members have suffered injuries as a result of Defendants' conduct, and they are entitled to appropriate relief, including compensatory damages.

## COUNT NINETEEN
### UNJUST ENRICHMENT
### (On behalf of all Classes against Defendant Facebook)

293.  Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

294.  Plaintiff and Class Members conferred a monetary benefit on Defendant Facebook – namely, among other things, Facebook used their personal information to amass increasingly detailed profiles of Plaintiff and Class Members and used those profiles to increase its advertising revenues.

295.  Plaintiff and Class Members did not authorize or otherwise consent to Defendant Facebook unlawfully intercepting and/or using their personal information.

296.  Defendant Facebook appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Facebook's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on Facebook, and Facebook accepted or retained that benefit; and (b) Facebook used Plaintiff's and Class Members' personal information for business purposes – namely, it intercepted and/or used the information to increase its advertising revenues.

297.  Defendant Facebook did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

298.   Defendant Facebook acquired Plaintiff's and Class Members' personal information through inequitable means in that it surreptitiously obtained the information to Plaintiff's and Class Members' detriment.

299.   Plaintiff and Class Members have no adequate remedy at law.

300.   Under the circumstances, it would be unjust and unfair for Defendant Facebook to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

301.   Under the principles of equity and good conscience, Defendant Facebook should not be permitted to retain the personal information belonging to Plaintiff and Class Members because Facebook obtained that information under false pretenses.

302.   Defendant Facebook should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

**COUNT TWENTY**
**UNJUST ENRICHMENT**
**(On behalf of all Classes against Defendant LinkedIn)**

303.   Plaintiff restates and realleges all paragraphs of this First Amended Class Action Complaint as though fully set forth herein.

304.   Plaintiff and Class Members conferred a monetary benefit on Defendant LinkedIn – namely, among other things, LinkedIn used their personal information to

increase the revenues derived from Navigator to increase the sales of its other services and products.

305. Plaintiff and Class Members did not authorize or otherwise consent to Defendant LinkedIn unlawfully intercepting, using and/or disclosing their personal information.

306. Defendant LinkedIn appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from LinkedIn's conduct toward Plaintiff and Class Members as described herein – namely: (a) Plaintiff and Class Members conferred a benefit on LinkedIn, and LinkedIn accepted or retained that benefit; and (b) LinkedIn used Plaintiff's and Class Members' personal information for business purposes – namely, it intercepted, used and/or disclosed the information to generate increased revenues.

307. Defendant LinkedIn did not provide full compensation for the benefit Plaintiff and Class Members conferred upon it.

308. Defendant LinkedIn acquired Plaintiff's and Class Members' personal information through inequitable means in that in that it surreptitiously obtained the information to Plaintiff's and Class Members' detriment.

309. Plaintiff and Class Members have no adequate remedy at law.

LOEVY & LOEVY
Attorneys at Law

310.   Under the circumstances, it would be unjust and unfair for Defendant LinkedIn to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

311.   Under the principles of equity and good conscience, Defendant LinkedIn should not be permitted to retain the personal information belonging to Plaintiff and Class Members because LinkedIn obtained that information under false pretenses.

312.   Defendant LinkedIn should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Todd Hurvitz, on behalf of himself and on behalf of the all Class Members, respectfully seeks from the Court the following relief:

a.   Certification of the Classes as requested herein;

b.   Appointment of Plaintiff as Class representative and his undersigned counsel as Class counsel;

c.   Award Plaintiff and members of the proposed Classes compensatory, statutory and punitive damages;

d.   Award Plaintiff and members of the proposed Classes equitable, injunctive and declaratory relief;

e.   Award Plaintiff and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law;

f.   Award Plaintiff and members of the proposed Classes reasonable attorneys' fees and costs of suit; including expert witness fees; and

g.   Award Plaintiff and members of the proposed Classes any further relief the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: May 12, 2020

Respectfully submitted,

TODD HURVITZ

By:   /s/ Scott R. Drury
SCOTT R. DRURY
*One of Plaintiff's Attorneys*

David B. Owens (david@loevy.com)
Mike Kanovitz (mike@loevy.com) (*pro hac vice*)
Scott R. Drury (drury@loevy.com) (*pro hac vice*)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

LOEVY & LOEVY
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

Marci L. Miller (marci@milleradvocacy.com)
Christina N. Hoffman (choffman@milleradvocacy.com)
MILLER ADVOCACY GROUP PC
1303 Avocado Ave., Suite 230
Newport Beach, California 92660
(949) 706-9734 (phone)
(949) 266-8069 (fax)

*Counsel for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOEVY & LOEVY
Attorneys at Law

## **<u>CERTIFICATE OF SERVICE</u>**

Scott R. Drury, an attorney, certifies that on May 12, 2020, he served a true and correct copy of the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Scott R. Drury
SCOTT R. DRURY

FIRST AMENDED CLASS ACTION COMPLAINT